**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-60836

(Summary Calendar)
_____

ROLAND FELIX EYOUM,

Petitioner,

versus

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
(A74-155-926)

September 16, 1997

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Roland Felix Eyoum ("Eyoum"), proceeding *pro se*, petitions for
review of an order of the Board of Immigration Appeals ("BIA")
finding him deportable for remaining in the United States beyond
the time permitted by his visa and denying him permission to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

voluntarily depart the United States.  We dismiss Eyoum's claim regarding voluntary departure for lack of subject matter jurisdiction and affirm the BIA on all other claims.

I

Eyoum, a native and citizen of Cameroon, entered the United States legally in July 1993 as a nonimmigrant for a period of six months or one year, a period that was subject to extension.[1] Eyoum's admission was classified as B-2 or "for pleasure," which meant that he could not pursue employment in the United States. Eyoum nonetheless operated an import/export business in the United States, as well as overstayed his visa.

In 1995, Eyoum pleaded guilty to illegally importing pancake tortoises in violation of 18 U.S.C. § 545.  The court sentenced him to twelve months and one day in custody, three years' probation, and a $50 special assessment.  Eyoum claimed that he was required to serve only ten months and two weeks of the sentence.  The sentence was on appeal to the United States Court of Appeals for the Seventh Circuit during Eyoum's initial immigration proceedings before the immigration judge ("IJ").  The Seventh Circuit has since affirmed Eyoum's sentence.  *United States v. Eyoum*, 84 F.3d 1004 (7th Cir.), *cert. denied*, __ U.S. __, 117 S. Ct. 326, 136 L. Ed. 2d 240 (1996).

---

[1]	The INS alleged that Eyoum had originally had a one-year authorization.  Eyoum, however, claimed at his deportation hearing that he had been admitted for only six months.

The Immigration and Naturalization Service ("INS") brought deportation proceedings against Eyoum, alleging that he was deportable under both 8 U.S.C. § 1251(a)(1)(B) (overstaying a visa) and under 8 U.S.C. § 1251(a)(2)(A)(i) (conviction of a crime of moral turpitude). The IJ ruled orally at Eyoum's deportation hearing that the evidence did not support the charge of deportability under § 1251(a)(2)(A)(i) because Eyoum's sentence was on appeal, and thus it was unclear whether Eyoum's sentence would ultimately be greater than one year, the temporal requirement for deportation based on conviction of a crime of moral turpitude. The IJ also concluded, however, that Eyoum was deportable because he had overstayed his visa. In so finding, the IJ rejected Eyoum's argument that § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255, permitted him to adjust his status to prevent a finding that he was deportable. The IJ also determined that Eyoum was not entitled to any form of relief from deportation.

On appeal, the BIA concluded that the crime of which Eyoum was convicted did not involve moral turpitude because Eyoum's importation of pancake turtles was illegal only because he had failed to complete the proper paperwork. The BIA thus held that Eyoum's crime did not render him deportable or inadmissible. However, the BIA determined that Eyoum was deportable for overstaying his visa. The BIA also found that Eyoum was not eligible for voluntary departure because his ten-month incarceration demonstrated that he lacked the necessary good moral

-3-

character to qualify for voluntary departure. Eyoum petitions for review of the BIA's decision.

                                    II

We will affirm an order of deportation issued by the BIA if supported by reasonable, substantial and probative evidence on the record considered as a whole. *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996). We review findings of fact for substantial evidence. *Id.* We will affirm the Board's findings of fact unless the alien can show that the evidence in his favor was so compelling that no reasonable factfinder could conclude against it. *Id.* We review conclusions of law *de novo*, but defer to the BIA's interpretation of ambiguous statutory provisions. *Id.*

Eyoum challenges the BIA's determination that he is not entitled to voluntary departure. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, we lack jurisdiction to review claims for discretionary relief, including claims regarding voluntary departure. 8 U.S.C. § 1252(a)(2)(B) (referring to 8 U.S.C. § 1229c); IIRIRA § 309(c)(4)(E). Because the BIA entered its final order in Eyoum's case on November 27, 1996, we lack jurisdiction to review his claim that the BIA erred in denying his request for voluntary departure. *See Choeum v. INS*, Nos. 96-1446, 97-1552, 1997 WL 356365, at *12 (1st Cir. July 2, 1997) (explaining that IIRIRA's transitional rules make jurisdiction-stripping provision

-4-

applicable to all aliens in proceedings on April 1, 1997 for whom a final order of exclusion or deportation was entered more than thirty days after September 30, 1996).[2]

Eyoum argues that he qualifies for an adjustment of status pursuant to § 245(i) of the INA, 8 U.S.C. § 1255, because he is entitled to a visa as an alien entrepreneur.  Eyoum's argument fails for two reasons.  First, even if he qualified as an alien entrepreneur, he would not be entitled to adjustment of status pursuant to § 245(i) because he never applied for an adjustment. Second, Eyoum incorrectly assumes that he qualifies as an alien entrepreneur.  To qualify, an alien must demonstrate that he has established a commercial enterprise in which he has invested $500,000 to $1,000,000, and that the enterprise will create full-time employment for not fewer than ten American citizens or lawful permanent residents.  8 U.S.C. §§ 1153(b)(5)(A), 1153(b)(5)(C)(i) and (ii).  Eyoum's business does not satisfy these requirements because, as Eyoum admitted, he has invested only $100,000 in the enterprise and the record contains no evidence that the enterprise

_____

[2]      Moreover, Eyoum cannot demonstrate that he possesses the good moral character required for voluntary departure.  *See* 8 U.S.C. § 1101(f)(7) ("For the purposes of this chapter))No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was))one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period . . . .").

has created any jobs.

Eyoum also argues that his eligibility for admission as a "treaty investor" requires that his nonimmigrant status be adjusted pursuant to 8 C.F.R. § 248.1. However, as the BIA explained, Eyoum never applied for status as a treaty investor. In any event, because Eyoum's previous immigrant status expired, he does not qualify for a change in status. *See* 8 C.F.R. § 248.1(b) ("A change in status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed . . . .").

The regulation contains an exception for aliens who demonstrate, among other things, that the failure to file a timely petition was due to "extraordinary circumstances beyond the control of the applicant or petitioner," 8 C.F.R. § 248.1(b)(1), and that the alien "has not otherwise violated his or her nonimmigrant status." 8 C.F.R. § 248.1(b)(2). Even if Eyoum could demonstrate extraordinary circumstances that prohibited his filing of a timely petition, he violated his nonimmigrant status by engaging in commerce while in the United States on a pleasure visa. *Cf. Patel v. INS*, 811 F.2d 377, 383 (7th Cir. 1987) (explaining that BIA "is entitled to take dim view of nonimmigrant aliens who work without permission in violation of their nonimmigrant status").

Relying on *In re Garcia*, 16 I. & N. Dec. 653 (Dec. 27, 1978), Eyoum last contends that the BIA erred in failing to postpone his

deportation hearing pending a decision by the BIA regarding his claim for adjustment of status. Because Eyoum never submitted an application for an adjustment in status and because, had he done so, he was ineligible for an adjustment in status to that of alien entrepreneur, Eyoum's argument that the deportation hearing should have been stayed lacks merit. *See Garcia*, 16 I. & N. Dec. at 657 ("It clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance or a motion to reopen upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition.").

We DISMISS Eyoum's claim for voluntary departure, AFFIRM the decision of the Board of Immigration Appeals and we DENY Eyoum's motion for bond.